DENNIS, Justice.
Defendant, Larry Manning, was convicted in a jury trial of armed robbery, La.R.S. 14:64, and sentenced to sixteen years at hard labor without benefit of parole. The conviction and sentence must be reversed. The trial judge erred in allowing the state to use an inculpatory statement made by the defendant, previously suppressed by the court, to impeach his testimony without showing that the statement was voluntarily given. Finding reversible error in this assignment we do not consider the defendant’s other assignments of error.
On May 5, 1978, the Hi-Lo Grocery store, in Webster Parish, was robbed. Two witnesses identified defendant Larry Manning as the robber. Defendant Manning testified, to the contrary, that the robbery was committed by a passenger in his car, William Ray Hatter, without his complicity, when Manning stopped outside the store to let Hatter go in to buy beer. On cross-examination defendant Manning was shown a photograph of one of the lineups in which both he and Hatter were subjects. After positively identifying Hatter in the photograph, defendant Manning testified:
“Q. No. 6, okay. Is that the man who robbed the store?
“A. Yes.
“Q. He went inside and you didn’t?
“A. Yes.
“Q. Mr. Manning, I call your attention to May 6th, the day after the robbery, about 6:00 p. m. on the third floor of the courthouse in the office of Deputy Bloxom and Deputy Jimmy Morgan, did you, at that time, make a statement to them . . .
*96 “[DEFENSE COUNSEL]: Objection, Your Honor, I think the Court has ruled on that.”
Out of the presence of the jury the defense counsel argued that the statement which the prosecutor sought to use to impeach the defendant’s testimony had previously been ordered suppressed by the court after a motion to suppress hearing. The judge acknowledged that he had suppressed the defendant’s statement because there was evidence that the defendant had been intimidated and the officers’ testimony was inconsistent on the number of statements given. Nevertheless, the trial judge ruled that the defendant could be cross-examined as to the statement for purposes of impeachment.
When the jury returned, the prosecutor asked the question again, eliciting from Manning the following response:
“Q. Yes, sir, I’ll call your attention to May the 6th, the day after the robbery, approximately 6:00 P.M., Webster Parish Courthouse, third floor conversation you had with Deputy Bloxom and Deputy Morgan. In response to a question, concerning what the man with you looked like, sir, did you tell them that he was about a couple of inches taller than I am, he’s a little darker than I am and he keeps his hair plaited all of the time?
“A. Yes.”
In the photograph, which was introduced and exhibited to the jury, the person identified by Manning as Hatter had noticeably different characteristics, in that he was shorter than Manning, had a similar complexion, and did not have his hair plaited.
The use as an impeachment tool of an accused’s inculpatory statement, obtained without advising him of his constitutional rights, is allowed if it can be shown that the statement was freely and voluntarily given. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); State v. Kent, 371 So.2d 1319 (La.1979). However, “any criminal trial use against a defendant of his involuntary statement is a denial of due process of law . . .” Mincey v. Arizona, 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290, 303 (1978). Moreover, the state is further required, before introducing the confession at the trial, to establish the predicate of voluntariness before the jury in order to enable the jury, as trier of fact, to determine what weight to give to the confession or inculpatory statement. State v. McGraw, 366 So.2d 1278 (La.1979); State v. Lovett, 345 So.2d 1139 (La.1977); Pugh, Louisiana Evidence Law, 279-89 (1974).
Clearly, the reference to the statement by the prosecutor to impeach the defendant’s testimony was a use of the statement. In fact, the statement was used to the fullest extent possible by extracting from the defendant in the presence of the jury a definite admission that he had made the statement. By admitting that he had made the statement, Manning’s credibility had been effectively impeached. La.R.S. 15:493; State v. Mosely, 360 So.2d 844, 846 (La.1978); State v. Zeno, 322 So.2d 136 (La.1975).
The erroneous use of the inculpatory statement, in substantial violation of the defendant’s constitutional rights, was prejudicial to the substantial rights of the accused. It cannot be considered as harmless error. Cf. La.C.Cr.P. art. 921; State v. McGraw, supra; State v. Lemelle, 353 So.2d 1312 (La.1977). There having been substantial violations of Manning’s constitutional rights by use of his inculpatory statement, without establishing a predicate of volun-tariness before either the judge or jury, the conviction must be reversed. La.C.Cr.P. art. 921.
The conviction is reversed and the matter is remanded for a new trial.
REVERSED AND REMANDED.