618 So.2d 933 (1993)
STATE of Louisiana
v.
Robert John CARLOS.
No. 92 KA 0732.
Court of Appeal of Louisiana, First Circuit.
April 23, 1993.
*936 John R. Walker, Asst. Dist. Atty., Houma, for plaintiff and appelleeState of La.
Anthony P. Champagne, Indigent Defender, Houma, for defendant and appellantRobert John Carlos.
Before WATKINS, CRAIN and GONZALES, JJ.
WATKINS, Judge.
The defendant, Robert John Carlos, was charged by bill of information with cruelty to a juvenile and obstruction of justice, violations of LSA-R.S. 14:93 and 130.1 A(3)(a). He pled not guilty. After trial by jury, the defendant was found guilty as charged of cruelty to a juvenile and was acquitted of the charge of obstruction of justice. Thereafter, the State filed a habitual offender bill of information; after a hearing, the defendant was adjudicated a second felony habitual offender. LSA-R.S. 15:529.1 The defendant received a sentence of fifteen years at hard labor, with credit for time served. He has appealed, alleging fourteen assignments of error, as follows:
1. The trial court erred in denying the defendant's motion for a change of venue.
2. The trial court erred in ordering Rozella Foret to testify.
3. The trial court erred in denying the defendant's challenge for cause of prospective jurors Jerry Foret and Carolyn Ledet.
4. The trial court erred in permitting Michael Dean to testify as to what he observed on State Exhibits 3-5.
5. The trial court erred in overruling the defendant's objection to leading questions.
6. The trial court erred in overruling the defendant's objection to the prosecutor's questioning of Rozella Foret regarding a previous statement.
7. The trial court erred in sustaining the prosecutor's objection to defense counsel's questioning of Glenn Rodrigue.
8. The trial court erred in overruling the defendant's objection to the prosecutor's questioning of Lynn Lirette and Euia Usie regarding conversations with Rozella Foret.
9. The trial court erred in allowing into evidence over the defendant's objection photographs depicting the injuries to the victim and Rozella Foret.
10. The trial court erred in allowing into evidence over the defendant's objection a videotape depicting the victim's injuries.
11. The trial court erred in sustaining the prosecutor's objection to defense counsel's questioning of Druis Carlos.
12. The trial court erred in adjudicating the defendant a second felony habitual offender.
13. The trial court erred in imposing an excessive sentence.
14. The jury verdict was contrary to the law and evidence.
Assignments of error numbers 1, 2, 7, and 11 were not briefed on appeal and, therefore, are considered abandoned. Uniform *937 RulesCourts of Appeal, Rule 2-12.4.

FACTS
In November of 1990, Rozella Foret and her two year old son, the victim in this case, were living with the defendant in a trailer on Coteau Road in Terrebonne Parish. On the evening of November 22, 1990, Ms. Foret and the defendant took the victim to a baby-sitter, Connie Racine, before going out with their neighbors, Tammy and Glenn Rodrigue. During the night, the couples drank, danced, and shot pool at several lounges in Houma. In the early morning hours of November 23, the defendant and Ms. Foret stopped at Ms. Racine's house, picked up the victim, and went home. Shortly after they arrived back at their trailer, as Ms. Foret was about to go to sleep, she heard a noise and felt the trailer shaking. When she went to investigate, she found that the victim was not in his bedroom. When she looked in the bathroom, she saw the victim bleeding from the mouth and nose. The defendant was cleaning off the victim's face. When Ms. Foret asked what had happened, the defendant replied that he did not know and that he had found the victim in that condition. However, they had just returned to the trailer, and the victim did not have any such injuries when they picked him up from the baby-sitter.
When Ms. Foret took the victim into her room and turned on the light, she noted the extent of the victim's injuries and again asked the defendant what had happened. The defendant replied that "that's what [the defendant] wanted to do to [the victim's] father." Ms. Foret then got dressed, grabbed the victim, and climbed out the back window. Eventually, the victim was taken to a local hospital. A subsequent examination of his injuries revealed that he had been beaten and possibly choked. He had bruises, red marks, and abrasions on various parts of his body.

ASSIGNMENT OF ERROR NO. THREE:
In this assignment of error, the defendant contends that the trial court erred in denying his challenges for cause of prospective jurors Jerry Foret and Carolyn Ledet.
LSA-C.Cr.P. art. 797 provides, in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
. . . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;....
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the prospective juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to the law reasonably may be inferred. State v. Thompson, 489 So.2d 1364, 1370 (La. App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986). However, the trial court is vested with broad discretion in ruling on a challenge for cause; its ruling will not be disturbed on appeal absent a showing of an abuse of that discretion. State v. Dufrene, 461 So.2d 1263, 1266 (La.App. 1st Cir.1984).
In his brief to this court, the defendant contends that Jerry Foret could not remain impartial because of his relationship to the victim and his mother, Rozella Foret. We disagree. During voir dire examination, the following colloquy occurred between the trial court and Jerry Foret.
BY THE COURT:
Q. Do any of you know any of these individuals that may be witnesses in this case? Yes? ... Mr. Foret, I believe you had raised your hand?

*938 A. Yes.
Q. Who do you know?
A. I know the Forets.
Q. Are you related to the Forets?
A. Yes.
Q. In what way are you related to the Forets?
A. Third cousin.
Q. Third cousin; do you see them on a regular basis?
A. No, I don't see them.
Q. The fact that you are related to them, would that in anyway affect your ability to hear this case?
A. Probably not.
Q. Okay, you feel that you could decide the case solely upon the evidence presented?
A. Probably so.
Thereafter, neither the prosecutor nor defense counsel questioned Jerry Foret any further about his relationship to the victim or Rozella Foret. After considering the above excerpt from the voir dire examination, we find no indication that Jerry Foret would be unable to render an impartial decision in the case and, therefore, find no abuse of discretion in the trial court's denial of the defendant's challenge for cause of Jerry Foret.
The defendant also contests the denial of his challenge for cause of Carolyn Ledet on the basis of her ties to law enforcement officers. It is well-settled that relationship to a law enforcement officer is not of itself grounds for a challenge for cause. Rather, the question presented is whether the prospective juror could assess the credibility of each witness independently of his relationship with members of law enforcement. State v. Collins, 546 So.2d 1246, 1253 (La.App. 1st Cir.1989), writ denied, 558 So.2d 599 (La.1990).
In his brief to this court, the defendant also contends that Carolyn Ledet could not remain impartial because of her "intimate ties to numerous police officers." Again we disagree. During voir dire examination, the following colloquy occurred between the trial court and Ms. Ledet:
BY THE COURT:
Q. Do any of you have any friends or relatives employed by the District Attorney's Office, the Department of Corrections, the State or City police, the sheriff's office, or any other law enforcement agency? Yes, ma'am, Mrs. Ledet?
A. Your Honor, I know a lot of them because my husband used to work for the city, but it wouldn't affect my ability at all.
Q. You would not give their testimony any more creditability (sic) than any other witness in the case?
A. No, Your Honor.
Q. Okay.
A. Not at all.
Thereafter, neither the prosecutor nor defense counsel questioned Ms. Ledet any further about her husband's former job or the fact that she apparently knew "a lot of" law enforcement officers. Contrary to the defendant's argument, a review of Ms. Ledet's responses indicated that she would not be affected by any relationship to law enforcement officers. Accordingly, we find no abuse of discretion by the trial court in denying defendant's challenge for cause of Ms. Ledet.
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NO. FOUR:
In this assignment of error, defendant contends that the trial court erred in overruling his objection to the testimony of Terrebonne Parish Sheriff's Deputy Michael Dean referring to bloodstains on State Exhibits 3, 4, and 5.
State Exhibit 3 was a mattress cover. State Exhibit 4 was a bed sheet. State Exhibit 5 consisted of two towels. Terrebonne Parish Sheriff's Deputy Michael Dean obtained these items from the trailer in which the victim, his mother, and the defendant resided. Over the defendant's objection, Deputy Dean testified that spots on these exhibits appeared to be bloodstains. He also testified that these apparent bloodstains were not sent to the crime lab for analysis.
In overruling the objection, the trial court indicated that because Deputy Dean *939 was not an expert witness, he could not definitely testify that these spots were bloodstains. However, it ruled that the deputy could testify to what these stains looked like to him. This ruling was correct. An expert witness or scientific analysis is not required to identify blood under all circumstances. Blood is such a common thing that a lay witness may properly testify that he recognized it as such. See State v. Jones, 593 So.2d 1301, 1308 (La.App. 1st Cir.1991). Furthermore, the victim's mother testified that she entered the bathroom and observed the victim bleeding from the nose and mouth. The defendant was cleaning off the victim's face. She also testified that State Exhibits 3, 4, and 5 did not have any spots on them before this beating incident occurred.
This assignment of error is meritless.
ASSIGNMENT OF ERROR NO. FIVE:
In this assignment of error, the defendant contends that the trial court erred in allowing the prosecutor to ask a leading question of a State witness.
During the direct examination of Rozella Foret, the victim's mother, the following colloquy occurred:
[PROSECUTOR]:
Q. What did you do after you found your son in the bathroom?
A. II looked at Bob [the defendant] and I asked Bob what happened. And Bob looked at me, he said he didn't know what happened, he found [the victim] like that.... And I put the light on, and when I put the light on I noticed [the victim] had more than just a busted nose. And I looked at Bob and I asked Bob, I said why, you know, why hewhy a little child, you know, what happened? And he just looked at me and he said that's what he wanted to do to his father.
Q. Who was he talking about?
A. He's talking about my son's father.
Q. And who is your son's father?
A. Arty Marcel.
Q. So you're saying he did that because that's what he wanted to do to Arty Marcel
A. Yes, sir.
Q.your young son's dad?
[DEFENSE COUNSEL]:
I'm going to object to the lead, Your Honor.
[PROSECUTOR]:
I'm trying to clarify this, Your Honor.
[DEFENSE COUNSEL]:
It's a lead.
[PROSECUTOR]:
Q. What happened next?
THE COURT:
Wait a minute. Heshe had already answered part of this question, and the Code of Evidence does allow certain leading questions to clarify answers already given. I'm going to overrule the objection.
Louisiana Code of Evidence Article 611 C provides, in pertinent part:
Generally, leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony and in examining an expert witness on his opinions and inferences. However, when a party calls a hostile witness, a witness who is unable or unwilling to respond to proper questioning, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.
The use of leading questions is largely within the discretion of the trial court, and only a clear abuse of that discretion which prejudices the defendant's rights will justify the reversal of a conviction. State v. Young, 576 So.2d 1048, 1056 (La.App. 1st Cir.), writ denied, 584 So.2d 679 (La.1991).
The above excerpt indicates that the alleged leading questions were merely an attempt by the prosecutor to clarify Ms. Foret's previous response which was somewhat ambiguous, due to her use of the words "he" and "his father" in the same sentence. See State v. Revere, 572 So.2d 117, 138 (La.App. 1st Cir.1990), writ denied, 581 So.2d 703 (La.1991). To ask a witness what he said previously does not constitute a leading question. State v. Sheppard, 350 So.2d 615, 644 (La.1977).
*940 Accordingly, we find no error in the trial court's ruling.
This assignment of error is meritless.
ASSIGNMENTS OF ERROR NOS. SIX AND EIGHT:
In assignment of error number six, the defendant contends that the trial court erred in allowing the prosecutor to impeach his own witness, Ms. Foret, with her prior inconsistent statements. In assignment of error number eight, the defendant contends that the trial court erred in allowing the prosecutor to elicit from Terrebonne Parish Sheriff's Detectives Lynn Lirette and Euia Usie these prior inconsistent statements made to them by Ms. Foret.
Louisiana Code of Evidence Article 607 provides:
A. The credibility of a witness may be attacked by any party, including the party calling him.
B. The credibility of a witness may not be attacked until the witness has been sworn, and the credibility of a witness may not be supported unless it has been attacked. However, a party may question any witness as to his relationship to the parties, interest in the lawsuit, or capacity to perceive or to recollect.
C. Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.
D. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
Prior inconsistent statements by a witness may be considered for impeachment purposes only, and not as substantive evidence of the defendant's guilt. State v. Denis, 384 So.2d 419, 420 (La. 1980). See also LSA-C.E. art. 607 D(2). When a defendant requests a jury instruction on prior inconsistent statements, the trial court's failure to do so constitutes reversible error. State v. Denis, 384 So.2d at 420.
In his brief to this Court, the defendant refers to two sets of prior inconsistent statements made by Ms. Foret. First, there are two prior inconsistent statements relating to the instant offense. Second, there are other prior inconsistent statements relating to the charge of obstruction of justice. Apparently, the obstruction of justice charge was based upon the fact that, subsequent to the November 23, 1990, incident involving the victim, the defendant allegedly inflicted a beating on Ms. Foret to influence her testimony and/or prevent her from testifying at the trial. During her trial testimony, Ms. Foret stated that she actually provoked this fight with the defendant. When questioned about whether or not she received any bruises on her neck resulting from that fight, Ms. Foret replied that the marks on her neck were passion marks, not bruises. In an attempt to impeach Ms. Foret's trial testimony concerning her fight with the defendant, the prosecutor questioned Detective Usie about the victim's prior inconsistent statements made to him concerning the cause of this fight and who provoked it.
As the trial court correctly ruled, it was apparent that Ms. Foret had changed her story to some extent in connection with this alleged fight with the defendant and, therefore, the prosecutor was properly allowed to explore such changes in her story by questioning both Ms. Foret, the person who allegedly made the prior inconsistent statements, and Det. Usie, the person to whom Ms. Foret made the prior inconsistent statements. In any event, because the defendant was acquitted on the charge of obstruction of justice, we find that any *941 possible error by the trial court in connection with these particular prior inconsistent statements was harmless beyond a reasonable doubt. LSA-C.Cr.P. art. 921.
The remaining arguments by the defendant refer to the two prior inconsistent statements relating to the instant offense. First, Ms. Foret apparently stated to law enforcement officers that she saw, or at least heard, the defendant strike the victim inside the bathroom. However, at the trial, Ms. Foret testified that she entered the bathroom and saw the defendant cleaning off the victim's face. She specifically explained that she told the law enforcement officers she saw the defendant strike the victim because they would not take action unless she actually witnessed the abuse. Over defense counsel's objections, the trial court allowed the prosecutor to question Ms. Foret about this discrepancy and also allowed the prosecutor to question Det. Lirette about her prior inconsistent statement to him.
Second, Ms. Foret testified at the trial that she was drunk on the night of November 23, 1990. However, the prosecutor showed her a written statement (apparently made by her but which was never introduced into evidence) and asked if the written statement refreshed her memory. Ms. Foret replied that the written statement did not change her memory, at which point the prosecutor concluded his direct examination. Subsequently, the prosecutor asked Det. Lirette if he had questioned Ms. Foret on the subject of intoxication. Det. Lirette stated "her response was they had been drinking, but no one appeared to have been intoxicated." Again, over defense counsel's objections, the trial court allowed the prosecutor to question Ms. Foret and Det. Lirette about this prior inconsistent statement.
In his brief to this Court, the defendant states: "The prior inconsistent statement was never introduced into evidence. It cannot, and should not have been used as substantive evidence of defendant's guilt.... A jury charge should have been read to the jury instructing them not to use the prior statement as substantive evidence.... The prior inconsistent statement was never proven or shown to have been made by Rosella (sic) Foret. No one testified as to time, place or circumstances surrounding the taking of the statement. No foundation was laid relative to same."
Initially, we note that the trial court did include in the jury charge a limiting instruction on the purpose and use of prior inconsistent statements. Furthermore, while the written statement or statements containing Ms. Foret's prior inconsistent statements were not introduced into evidence, the testimony of Det. Lirette was introduced to prove that Ms. Foret made prior inconsistent statements to him. Moreover, Ms. Foret acknowledged making the first prior inconsistent statement when she testified that she informed law enforcement officers that she had actually seen the defendant strike the victim. Contrary to the defendant's argument, an adequate foundation for both of these prior inconsistent statements was established by the prosecutor's questioning of Ms. Foret.
Finally, the defendant cites State v. Manning, 376 So.2d 95, 96 (La.1979); State v. McGraw, 366 So.2d 1278, 1281-1282 (La. 1978); and State v. Ehrhard, 576 So.2d 1209, 1210 (La.App. 5th Cir.1991), for the proposition that Ms. Foret's prior inconsistent statements were inadmissible, because it was never established that she made these statements freely and voluntarily and/or after being advised of her Miranda rights. However, these cases cited by the defendant refer to situations in which the accused takes the stand in his own defense at trial and the prosecutor seeks to impeach him with a prior inconsistent statement. Because Ms. Foret was not an accused, these cases are inapposite. Moreover, there is no reason to believe that Ms. Foret's prior inconsistent statements were anything other than free and voluntary reports to law enforcement officers of the circumstances surrounding the defendant's beating of her child.
For the above reasons, these assignments of error are meritless.
*942 ASSIGNMENTS OF ERROR NOS. NINE AND TEN:
In assignment of error number nine, the defendant contends that the trial court erred in allowing photographs of the victim (State Exhibits 6-30) and Ms. Foret (State Exhibits 33-37, and 39) to be admitted into evidence over his objection. In assignment of error number ten, the defendant contends that the trial court erred in allowing a videotape of the victim (State Exhibit 1) to be admitted into evidence over his objection. Specifically, the defendant contends that the prejudicial effect of this evidence outweighed its probative value.
LSA-C.E. art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
LSA-C.E. art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Photographs that illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted are generally admissible, provided their probative value outweighs any prejudicial effect. State v. Burge, 486 So.2d 855, 863 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La. 1986). The same rule applies to the admissibility of videotape. State v. Burdgess, 434 So.2d 1062, 1066 (La.1983); State v. Fleming, 593 So.2d 1298, 1300 (La.App. 1st Cir.1991).
Initially, we find it unnecessary to consider the relevance of State Exhibits 33-37, and 39, because the jury acquitted the defendant of the obstruction of justice charge. Concerning the videotape of the victim (State Exhibit 1) and the photographs of the victim (State Exhibits 6-30), we find that the probative value of this evidence far outweighed its prejudicial effect. Both State Exhibit 1 and State Exhibits 6-30 depicted various bruises, abrasions, and red marks on the victim's body. Additionally, the videotape showed the victim limping as he walked. The victim's injuries, as depicted by this evidence, are not so serious as to characterize this evidence as gruesome. However, it is indeed unpleasant to think that anyone would inflict a beating on a defenseless, blameless child. On the other hand, these exhibits were highly relevant, because the State was required to prove, as an element of the offense of cruelty to a juvenile, that defendant inflicted "unjustifiable pain or suffering" upon the victim. See LSA-R.S. 14:93 A. Accordingly, we find that the trial court correctly allowed this evidence to be admitted over the defendant's objections.
These assignments of error are meritless.

ASSIGNMENT OF ERROR NO. TWELVE:
In this assignment of error, the defendant contends that the trial court erred in adjudicating him to be a second felony habitual offender. The defendant does not contest the proof of the predicate felony conviction. Instead, he contends that his identification as the same person who committed this predicate conviction was insufficient and also claims that the State failed to establish that the five year cleansing period provided in LSA-R.S. 15:529.1 C had not elapsed.
The defendant's prior felony conviction occurred in Texas. At the habitual offender hearing, the State introduced into evidence State Exhibit 1, which consisted of a Jefferson County grand jury indictment charging defendant with burglary of a habitation committed on August 31, 1982. This exhibit also contains a guilty plea-rights waiver form and a minute entry showing that the defendant pled guilty to this offense on December 5, 1983, and received a sentence of five years in the Texas Department of Corrections. State Exhibit 3 was a copy of the defendant's records from the Louisiana Department of Public Safety and Corrections. State Exhibit 4 contained a copy of the defendant's records from the Texas Department of Criminal *943 JusticeInstitutional Division. State Exhibit 5 was Certificate of Parole from the Texas Board of Pardons and Paroles authorizing the defendant's release on parole to Louisiana. State Exhibit 6 was a parole discharge form from the Texas Department of Corrections indicating that the defendant was discharged from parole on May 1, 1988.
The instant offense occurred on November 23, 1990. The documentary evidence introduced at the habitual offender hearing established that the defendant was discharged from parole by the Texas Department of Corrections on May 1, 1988. Therefore, the State established that the five year cleansing period provided in LSA-R.S. 15:529.1 C had not expired.
Bill Null, a former Houma Police officer, was accepted by the trial court as an expert in fingerprint analysis. Mr. Null testified that a set of the defendant's fingerprints was taken in his presence on the previous day in the Terrebonne Parish Jail. The fingerprints were introduced into evidence as State Exhibit 2. Mr. Null compared these fingerprints to the fingerprints contained in the defendant's records from the Louisiana Department of Public Safety and Corrections (State Exhibit 3) and concluded that they were identical.
In his brief to this Court, the defendant contends that, because Mr. Null was unable to make a similar comparison with the fingerprints contained in the defendant's records from the Texas Department of Criminal JusticeInstitutional Division (State Exhibit 4), his identification testimony was insufficient to prove that the defendant was the same person who committed this predicate felony conviction of burglary of a habitation in Texas. We disagree. Mr. Null testified that the fingerprints contained in State Exhibit 4 were a photocopy and were of insufficient quality to make a comparison. However, the documentary evidence established that the defendant was released on parole to Louisiana, and his parole was supervised by employees from the Louisiana Department of Public Safety and Corrections. We consider Mr. Null's identification of the fingerprints contained in State Exhibit 3 to be a sufficient identification of the defendant as the same person who committed the predicate felony conviction of burglary of a habitation in Texas. Furthermore, Alvin Dupre, Jr., an employee of the Louisiana Department of Public Safety and Corrections, testified that he knew the defendant and that another supervision agent, Yul Hohency, actually supervised the defendant while on parole in Louisiana. Dupre specifically testified that he came into contact with the defendant on a couple of occasions during the defendant's parole supervision in Louisiana.
After a review of the testimony and the documentary evidence introduced at the habitual offender hearing, we find that the State introduced sufficient proof of the defendant's second felony habitual offender status. Therefore, the trial court correctly adjudicated the defendant to be a second felony habitual offender.
This assignment of error is meritless.
ASSIGNMENT OF ERROR NO. THIRTEEN:
In this assignment of error, the defendant contends that the trial court erred in imposing an excessive sentence.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. LSA-C.Cr.P. art. 894.1 (prior to its amendment by Act 22, Sec. 1, of 1991). The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence *944 within the statutory limits; such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La. App. 1st Cir.1990).
Before imposing sentence, the trial court reviewed the presentence investigation report and noted that the defendant had been adjudicated a second felony habitual offender based on the prior Texas felony conviction for burglary of a habitation. The court noted that, based on the defendant's prior criminal activities, in particular his crimes against the person, it was likely that he would continue to engage in similar criminal conduct as soon as he gets an opportunity. The trial court found that the defendant's conduct was not excused or justified and that this totally helpless victim had not induced or facilitated this offense. The court concluded that the defendant was in need of correctional treatment and stated that any lesser sentence would deprecate the seriousness of the offense. Our review of the sentencing transcript indicates that the trial court thoroughly complied with the Article 894.1 guidelines.
For his conviction of cruelty to a juvenile, upon being adjudicated a second felony habitual offender, the defendant was exposed to a minimum sentence of five years and a maximum sentence of twenty years at hard labor. See LSA-R.S. 14:93 D and 15:529.1 A(1). The defendant received a sentence of fifteen years at hard labor, which was within the middle range of the sentencing scale. Considering the circumstances of the instant offense, the defendant's criminal record, his adjudication as a second felony habitual offender, and the reasons for sentencing given by the trial court, we conclude that the instant sentence is not excessive.
This assignment of error is meritless.
ASSIGNMENT OF ERROR NO. FOURTEEN:
In this assignment of error, the defendant contends that the jury verdict was contrary to the law and the evidence. In other words, he contends that the evidence was insufficient to support the instant conviction. We note that, in order to challenge this conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post verdict judgment of acquittal. See LSA-C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
LSA-R.S. 14:93 A provides:
Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense.
In his brief to this Court, the defendant states: "In the instant case no evidence whatsoever was ever placed before the jury that Robert Carlos beat [the victim] other than the testimony of Lynn Lirette (as to the prior inconsistent statement of Rosella Foret).... The evidence against Robert Carlos was based on pure speculation and conjecture." We disagree. At the trial, the victim's mother explained *945 why she made this prior inconsistent statement. She testified that she told the authorities she had seen the defendant hit the victim as she entered the bathroom. However, at the trial, she testified that she did not actually see the defendant strike the victim. Instead, she explained that, as she entered the bathroom, she observed that the victim was bleeding from the mouth and nose and the defendant was cleaning off the victim's face. Ms. Foret testified that she told the authorities she saw the defendant strike the victim because she was informed they could take no action unless she had actually seen the defendant hit the child. Furthermore, the defendant's argument in brief completely ignores the fact that he made an inculpatory statement to Ms. Foret shortly after the beating. When she asked why the defendant hurt the victim, he replied that "that's what he wanted to do to [the victim's] father."
The victim, Ms. Foret, and the defendant were alone in the trailer when these injuries were inflicted upon the victim. Ms. Foret specifically testified that she did not inflict any bruises on the victim. These injuries were definitely not self-inflicted; and there was no evidence of an intruder. The defendant did not testify at the trial. Thus, there was no plausible alternative explanation for the victim's injuries. In finding the defendant guilty of cruelty to a juvenile, the jury obviously accepted the testimony of the State's witnesses, particularly Ms. Foret. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir.1984). Ms. Foret's credibility as a witness was a matter of the weight of the evidence, not subject to appellate review. State v. Jones, 596 So.2d 1360, 1370 (La.App. 1st Cir.), writ denied, 598 So.2d 373 (La.1992).
After a careful review of the record, we find that the evidence supports the jury's determination. We are convinced that a rational trier of fact, viewing all of the evidence as favorably to the prosecution as any rational fact finder can, could have concluded that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant committed the offense of cruelty to a juvenile.
This assignment of error is meritless.
For the foregoing reasons the conviction and sentence of defendant are affirmed.
CONVICTION AND SENTENCE AFFIRMED.