STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-763

STATE OF LOUISIANA

VERSUS

RICKEY JOSEPH

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 99477-FA
HONORABLE GARY J. ORTEGO, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and David E.
Chatelain*, Judges.

Chatelain, Judge, concurs and assigns reasons.

CONVICTIONS AFFIRMED, SENTENCES
VACATED, AND REMANDED.

*Honorable David E. Chatelain participated in this decision by appointment of the
Louisiana Supreme Court as Judge Pro Tempore.

**Hon. Trent Brignac**
**Thirteenth Judicial District Attorney**
**Nicole F. Gil**
**Asistant District Attorney**
**P. O. Drawer 780**
**Ville Platte, LA 70586**
**(337) 363-3438**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**P.O. Box 2125**
**Lafayette, LA 70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Rickey Joseph**

**GREMILLION, Judge.**

Defendant, Rickey Joseph, appeals his convictions and sentences for simple burglary, a violation of La.R.S. 14:62; theft, $500.00 or more but less than $1,500.00, a violation of La.R.S. 14:67(B)(2), *amended by* 2014 La. Acts No. 255, §1; and simple criminal damage to property less than $500.00, a violation of La.R.S. 14:56(B)(1). For the reasons that follow, we affirm Defendant's convictions, vacate his sentences, and remand to the trial court for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

In the wee hours of March 20, 2014, a burglar gained entry to K's Kuts Barber Shop in Ville Platte, Louisiana, by removing a window-mounted air conditioning unit. Security camera footage depicted Defendant as the burglar. Once inside, Defendant stole several items, valued at approximately $1,200.00. Defendant also caused minor damage to the window frame when he forced entry into the premises.

Defendant was charged with the above offenses by bill of information filed on May 12, 2014. The original bill of information simply alleged that Defendant violated La.R.S. 14:56, so it was amended on the date of trial, March 22, 2016, to allege that the criminal damage to property was less than $500.00 and to correct the name of the owner of the K's Kuts building. Defendant's objection to this amendment was overruled.

During jury selection, the State sought to backstrike prospective juror Mary Ann Fontenot, an African American. The defense stated it needed to "discuss the issues of [the State] striking all the African American people." Before the trial court fully responded, the prosecutor stated he would be glad to address the issue, which was allowed by the court. The State offered the following explanation:

Your Honor first of all the first peremptory exception that was used by the State was Ms. Tamyra Wallace. Uh...during the voir dire I pointed out to Ms. Nicole Gill that she had her eyes closed. I'd like to say she was sleeping but I cannot tell you she was sleeping. I can tell you she just kept her eyes closed multiple times. We took note of that. Our second back strike was Ms. Sybil Fontenot who is a white female who we made a challenge for cause that was denied. Our third back strike was James Anthony Lavergne. We will note that the defense in voir dire elicited the fact that he had hearing issues and that is one of the primary reasons that he was used as a peremptory exception. The fourth back strike was a white female named Chasity Guillory and I'll give you our explanation if you'd like which is she seemed a little gun hoe [sic] and maybe a little too aggressive from a standpoint of just a six person jury but to...to reiterate we struck a black, a white, a black, a white. So we, you know, we don't control the makeup of the venire and...and so we were being equal there. Our fifth strike was in fact Ms. Mary Ann Fontenot and very frankly uh... to articulate why we struck is...is basically just one of those feelings, you know, after looking at her and judging her. Uh...you know she mentioned she knew Chateuse James but I can't in good conscious tell you that that's the reason we used the perempt. We very simply used the perempt on her because we...it's just one of those things we didn't uh...we didn't think she'd serve the State's best interest.

The court responded:

And...and uh... your response you can do it now or we can... we can put it on the record later. I'm gonna reserve that right but ...but uh...based on the explanation of the District Attorney's Office the Court does not see any pattern and/or cause but you can...y'all can put that on the record when the jury's not there.

The matter ended at this point, and the parties continued with jury selection, and a six-person jury and an alternate were selected.

The trial court allowed the State to offer the testimonies of Defendant's brother, Mr. Stacy Joseph, and his sister-in-law, Mrs. Sheila Joseph, despite the State not identifying them as potential witnesses.

The following colloquy was had regarding the addition of the two witnesses prior to opening statements:

[DEFENSE COUNSEL]:

Your Honor uh...we've been notified that several witnesses may be called today that we were unaware of. Our discovery does not mention several of the witnesses that the prosecution wants to bring

2

forward. We feel that that is unfair and they should be excluded. We have not had time to talk to these witnesses, investigate these witnesses. We have no idea what they're going to say. So we're objecting to that Your Honor.

[THE COURT]:

Okay. I'm gonna let the State respond. . . . They gonna tell the Court when...when y'all filed y'all discovery and when they answered the discovery and all that information and uh...any law that either party has. . . .

[THE STATE]:

Your Honor in this matter at least two of these witnesses, Sheila Joseph and Stacy Joseph, we only recently came to know uh...that they knew anything about this. So it wasn't uh...a long period of time, we didn't keep it from them. We...they are here and we're just talking to them now. It's mainly identification is uh...what they're going to testify to.

[THE COURT]:

Well a couple of things and let me tell you what, I'm...the Court is gonna...can withhold hearing to allow you, the defense attorneys, to provide me any case law and the State and then what we...what they can do, we gonna do openings anyway and that'll take probably a half hour each or whatever it's gonna take on either party. The Court's not trying to stop it but the Court will take...will take that argument about the witnesses under advisement till the State will have an opportunity to answer that and then I will rule but it's my understanding uh...Mr. West and Ms. Alicia Kelly that uh...once the...once the discovery was answered and provided and I'm sure they have that. They can say when they were...y'all filed the discovery and when y'all answered 'em. I don't think there's, unless y'all show me some law or some case where there is any necessity for the District Attorney to provide their...their witnesses or the identity of their witnesses uh...uh...that they gonna call. I think that...that as stated and . . . this as to the identity and I think that's the whole crux of the case is...is having the State, if they can, prove beyond a reasonable doubt that it was this gentleman that...that committed those crimes and part of that is an identity but if you have some law or some cases. . . .

. . . .

[THE COURT]:

Okay. Alright. So what we gonna do is I'll withhold uh...my ruling on that but that's...unless y'all can present me with something the Court is going to allow those witnesses and uh. . . .We have

3

openings and I'm sure they can start with their witnesses that may not be in controversy. . . .and then we can go from there . . . .

We also note that neither when Stacy Joseph testified regarding Defendant's statement to him, nor when the statement was referenced by the State in its closing argument, did the defense object.

After deliberating, the jury unanimously convicted Defendant as stated above. The trial court sentenced Defendant to nine years at hard labor with three years suspended on the charges of simple burglary and theft. He was sentenced to six months at hard labor for simple criminal damage to property. Defendant was placed on supervised probation for three years, subject to certain conditions including a $1,000.00 fine, $127.50 court costs, $350.00 to the Indigent Defender Board, $250.00 cost of prosecution, $100.00 warrant fee, and "$50.00 victim fund and restitution." The trial court stated "Restitution to be determined by the probation and parole." The trial court imposed no payment plan on Defendant as a condition of his probation.

## ASSIGNMENTS OF ERROR

Defendant is appealing his simple burglary conviction and his sentences for theft and simple criminal damage to property. He asserts that the following errors were committed at trial:

I.      The trial court's sentence for counts 2 and 3 of the indictment are illegally excessive sentences.

II.     The State failed to sufficiently prove that Rickey Joseph was the person who burglarized the barber shop and, thus, was guilty.

III.    The trial court erred by allowing last minute witnesses to be added to the State's witness list, over the objection of the defense.

IV.     The trial court erred in rejecting Rickey Joseph's *Batson* [*v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986)] challenge because State failed to offer sufficient, race-neutral reasons for

4

its peremptory challenge to juror Mary Ann Fontenot and the trial court failed to follow the three-step process required for *Batson* challenges.

## ANALYSIS

*ERRORS PATENT*

Louisiana Code of Criminal Procedure Article 920 mandates that the court of appeal review all cases for errors patent on the face of the appeal. In this matter, we find one error patent in the bill of information and errors patent in Defendant's sentencing.

Defendant was charged by bill of information with simple burglary, theft, and criminal damage to property. Because simple burglary and theft are triable before a six-person jury, and simple criminal damage to property less than $500.00 is not triable to a jury, Defendant could not be charged by bill of information with all three offenses. La.Code Crim.P. art. 493. However, the appropriate means by which to raise this deficiency in the bill of information was for Defendant to file a motion to quash, which Defendant failed to do. Therefore, Defendant waived his objection to this error. La.Code Crim.P. art. 495; *State v. Williams*, 07-490 (La.App. 3 Cir. 10/31/07), 969 So.2d 744.

As stated above, Defendant's sentence placed him on supervised probation. As a condition thereof, the trial court ordered Defendant to pay restitution in an amount to be determined by "the probation and parole." We have held that a sentence that imposes restitution, but which fails to state the amount thereof, is illegal, and the case must be remanded for resentencing. *State v. Joseph*, 05-186 (La.App. 3 Cir. 11/2/05), 916 So.2d 378. Further, the trial court erred in failing to impose a payment schedule to govern Defendant's payment of fines, court costs, and probation fees. This, too, requires resentencing of Defendant. *State v. Arisme*, 13-269 (La.App. 3 Cir. 10/9/13), 123 So.3d 1259.

5

*SUFFICIENCY OF THE EVIDENCE*

If the evidence were insufficient to support Defendant's conviction, we would be required to acquit him; therefore, we will initially address Defendant's second assignment of error.

Erin Demourelle Fontenot's husband, Kalum, operates the barber shop, and Mrs. Fontenot is a stylist in the shop and currently owns the building. When shown the surveillance video footage, Mrs. Fontenot testified that it appeared to be Defendant shown therein. Mr. Stacy Joseph also testified that the person shown in the surveillance video burglarizing the shop appeared to be Defendant. Mr. Joseph paraphrased his conversations with Defendant:

> I asked him if he was the one that broke in the um...some...the beauty shop. He told me no, it wasn't him and I kept asking him the same question, same question over and over. He says, "that wasn't me. I don't know what you talking about" until he said, "yeah it was me." Then I'm like, "mais why you did that" and it went blank after that. Then there's another time when he asked me ...no I asked him, I got in touch with him on the phone and I asked him, I said, "why you did that", and he said, "did what." I said, "broke in the place." He said, "I told you that so you can leave me alone, stop asking me the same questions over and over," and I just . . .

When Mr. Joseph asked Defendant where the loot was, he said someone had it, and he gave Mr. Joseph directions to an old abandoned trailer. Mr. Joseph went to the trailer, but did not find the items. Had he found them, Mr. Joseph intended to return them to his wife's coworker, as he was related to the owner of the shop. Mr. Joseph viewed the video in court and said it looked like his brother; on cross-examination, he said he was ninety percent sure it was his brother. He added, "It could be a doubt."

On cross-examination, Mr. Joseph clarified his conversation with Defendant regarding the commission of the crime:

Q. I just have a few questions. You said that when you first asked him if he did it he kept saying no. How many times did you ask him if he did it and he said no?

A. About seven, eight time[s].

Q. Okay. And then you said, finally he said yes. Could it be possible he was doing it just so you would leave him alone?

A. That's what he told me.

Q. And then you said when you asked him later why he did it, he was ...you said did what, like he was confused, is that accurate?

A. Yeah.

Q. So it's possible that he was surprised and he had forgot he had told you he did it?

A. I...I guess. I kept asking him over.

Mrs. Sheila Joseph testified that she was employed at the hospital in Eunice with Mr. Don Demourelle near the time the incident occurred. Mrs. Joseph learned from Mr. Demourelle that his daughter, Erin, was the owner and one of the stylists at K's Kuts. While working at the hospital, Mrs. Joseph became aware of the burglary at K's Kuts and that Defendant may have committed the offense. She testified that she asked her husband if "he knew that Rickey committed that." According to Mrs. Joseph, her attempt to secure some of the stolen items was unsuccessful.

Mrs. Joseph was shown the video taken at the time of the burglary as well as the still photos taken from the video. When asked if the person in the photographs was Defendant, Mrs. Joseph replied, "one of 'em look like him yeah. Yeah." On cross-examination, the following exchange occurred regarding Mrs. Joseph's identification of Defendant in the pictures:

Q. Good afternoon Ms. Joseph. You said one of 'em looks like him, the other two don't?

A. It's kind of blurred.

7

Q. It is.

A. Yeah. So the one that I really thought that looked like him that's why I said it looks like him.

Q. And that one are you 100% sure it's him?

A. Yes.

Q. There's no doubt in your mind at all?

A. Un un.

Mr. Don Demourelle, Erin Fontenot's father, learned of the burglary and went to the shop. He provided the video of the burglary to the Ville Platte Police Department, but he could not identify anyone on the video. Mr. Demourelle testified that he retrieved the video and turned it over to police because the video was locked in a box to which he had the key. Mr. Demourelle also repaired the damaged framing around the air conditioner. He testified that it cost him about $50.00 in materials and about four hours to repair it.

The video obtained by Mr. Demourelle was turned over to Detective Chateuse James of the Ville Platte Police Department. Detective James contacted City Marshal Deputy Horace Johnson, who, with no hesitation, identified Defendant as the person in the video. Detective James testified that Kalum Fontenot provided her with a list of items that were missing and their values. This information was listed in an affidavit prepared for the arrest warrant. Listed were several tools of the barbering trade with a combined value of $1,223.00. Detective James testified that clean fingerprints could not be collected.

Officer Blade Bonnette with the Evangeline Parish Sheriff's Office testified that he was employed with the Ville Platte Police Department at the time this incident occurred, and he responded to the call. He verified that there was a forced entry through the window and items were taken.

8

Deputy Johnson testified that he was asked by Detective James to look at a video. The still photos from the video were shown to Deputy Johnson in court, and he identified Defendant with 99% certainty as the person in the video. At one time, Deputy Johnson had been a regular customer of Defendant.

Ronald Doucet, Ward I City Marshal, testified that he has known Defendant as a former neighbor of his in-laws and as a barber for the past eighteen years.[1] He testified he would see Defendant from time to time and used him as a barber a few times. Mr. Doucet viewed the video and was shown the still photographs from the video for the first time at trial. He testified that there was no doubt in his mind that the person on the video and in the photos was Defendant. Neal Lartigue, Chief of Police of Ville Platte, also testified that the person in the video is Defendant.

When a defendant raises sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the prosecution to determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371. We find that a rational trier of fact could have found that the State proved every element of the crimes charged beyond a reasonable doubt. Several witnesses identified Defendant as the burglar depicted in the surveillance video. Further, Defendant admitted to his brother at one time that he had perpetrated the crime. This assignment of error lacks merit.

*LATE-ADDED WITNESSES*

Defendant contends that the trial court erred in allowing the State to present the testimonies of his brother and sister-in-law because they were added at the last minute to the State's witness list. The State explained that it had only recently learned of the fact that they knew anything about the case. Because Mr. Stacy

---

[1] Defendant was a barber and worked at K's Kuts.

9

Joseph testified about Defendant's admission to having committed the burglary, Defendant contends that the State violated La.Code Crim.P. art. 768, which states:

> Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.

A violation of Article 768, though, may be considered harmless error when the other evidence of guilt is overwhelming. *State v. Breaux*, 473 So.2d 923 (La.App. 3 Cir. 1985). As noted above—and even excluding the evidence of Defendant's admission to his brother—we find the evidence of Defendant's guilt so overwhelming that any violation of Article 768 would constitute harmless error. This assignment of error has no merit.

BATSON *CHALLENGE*

Following jury selection, Defendant challenged the State's use of peremptory challenges to African American prospective jurors. *Batson*, 476 U.S. 79, held that an equal protection violation has occurred when a party exercises peremptory challenges to exclude a juror on the basis of race. A *Batson* analysis involves three steps. First, the court must determine whether Defendant has established a prima facie case that the prosecutor challenged a prospective juror on the basis of race. *State v. Wilkins*, 11-1395 (La.App. 3 Cir. 6/20/12), 94 So.3d 983, *writ denied*, 12-1712 (La. 3/1/13), 108 So.3d 782. If a prima facie showing has been made, the prosecutor must present race-neutral explanations for the challenge. *Id.* Those race-neutral explanations need not be persuasive. *Purkett v. Elem*, 524 U.S. 765, 115 S.Ct. 1769 (1995). If the prosecutor offers race-neutral explanations, the court must decide whether Defendant has demonstrated "purposeful discrimination." *State v. Sarpy*, 10-700, p. 14 (La.App. 3 Cir. 12/8/10), 52 So.3d 1032, 1042, *writ denied*, 11-46 (La. 6/3/11), 63 So.3d 1006. On appeal, "a

reviewing court owes the district judge's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous." *State v. Allen*, 03-2418, p. 12 (La. 6/29/05), 913 So.2d 788, 798, *cert. denied*, 547 U.S. 1132, 126 S.Ct. 2023 (2006).

At jury selection, Defendant's counsel challenged the State's exercise of peremptory challenges to all African American prospective jurors. The State responded to this by pointing out that it had exercised its first peremptory challenge against a woman who seemed to be sleeping during voir dire. Its second peremptory challenge was exercised against a white prospective juror prospective juror whom the prosecution had sought to challenge for cause. The third was exercised against an African American with hearing difficulties. The fourth was exercised to strike a Caucasian prospective juror who "seemed a little gum hoe [sic]." The State's explanation for striking Ms. Mary Ann Fontenot, an African American, was, to say the least, thin:

> Our fifth strike was in fact Ms. Mary Ann Fontenot and very frankly uh… to articulate why we struck is…is basically just one of those feelings, you know, after looking at her and judging her. Uh…you know she mentioned she knew Chateuse James but I can't in good conscious tell you that that's the reason we used the perempt. We very simply used the perempt on her because we…it's just one of those things we didn't uh…we didn't think she'd serve the State's best interest.

The trial court, though, found no pattern to the State's exercise of its challenges and denied Defendant's *Batson* challenge.

It is clear that the trial court found that Defendant failed to present a prima facie case that the State exercised it challenge on the basis of race. Only then would the burden shift to the State to offer race-neutral explanations for the exercise of its challenge. Defendant argued that the State exercised challenges to strike all African American prospective jurors, but that was not the case. With no

11

other showing than that three of the four stricken prospective jurors were African American, we cannot find that Defendant presented a prima facie case that the State struck Mrs. Fontenot on the basis of race. "[T]he mere invocation of *Batson* when minority prospective jurors are peremptorily challenged . . . .does not present sufficient evidence. . . . to lead to an inference of purposeful discrimination." *State v. Draughn*, 05-1825, pp. 25-26 (La. 1/17/07), 950 So.2d 583, 603, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537 (2007). "Otherwise, there would be no need for the first *Batson* step." *Id.* This assignment of error lacks merit.

*ILLEGALLY EXCESSIVE SENTENCES*

Defendant argues that his sentences for theft and criminal damage to property were illegally excessive. He is correct.

Ordinarily, a conviction for criminal damage to property less than $500.00 would not even be appealable; however, given the circumstances of this case, we choose to exercise our supervisory jurisdiction to review this sentence. *See* La.Const. art. 5, §10(A). The trial court sentenced Defendant to serve six months at hard labor for the charge of criminal damage to property where the damage is less than $500.00. The maximum penalty for this offense was and is a fine of not more than $1,000.00 and/or imprisonment for not more than six months. La.R.S. 14:56(B)(1). The sentence was illegally excessive.

Similarly, at the time of the offense, the maximum penalty for theft of anything of value between $500.00 and $1,500.00 was imprisonment with or without hard labor and/or a fine of not more than $2,000.00.[2] Defendant was sentenced to imprisonment at hard labor for nine years, with three years suspended. This sentence was illegally excessive.

---

[2] Louisiana Revised Statutes 14:67 was amended by 2014 La.Acts No. 255. This act became effective after the burglary of K's Kuts.

12

## DECREE

Defendant's convictions for theft, simple burglary, and simple criminal damage to property are affirmed. Defendant's sentences for all three offenses are vacated, and the matter is remanded for resentencing.

**CONVICTIONS AFFIRMED, SENTENCES VACATED, AND REMANDED.**

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT
### 16-763


## STATE OF LOUISIANA

## VERSUS

## RICKEY JOSEPH


**CHATELAIN, J.**, concurring to assign additional reasons.

I agree with the opinion of this court. However, I choose to write briefly on the State's decision to strike Mrs. Mary Ann Fontenot.

Although the supreme court thoroughly examined the role of "gut feelings" in *Alex v. Rayne Concrete Serv.*, 05-1457 (La. 1/26/07), 951 So. 2d 138, as part of an examination of purposeful discrimination on the grounds of race in the exercise of peremptory challenges, it is clear in the present case that the defendant failed to present a prima facie case that the State exercised this challenge on the basis of race. Even though the State may have been inarticulate in its explanation for striking Mrs. Fontenot, it nonetheless mentioned a race neutral ground for this juror's strike – Mrs. Fontenot knew Detective Chateuse James of the Ville Platte Police Department, a key State witness.

Although personal connections to and relationships with law enforcement personnel do not, by themselves, disqualify prospective jurors for cause, such associations and relationships are subject to careful scrutiny. *State v. Alexander*, 620 So.2d 1166 (La.1993); *State v. Ford*, 489 So.2d 1250 (La.1986), *vacated on other grounds*, 479 U.S. 1077, 107 S.Ct. 1272, 94 L.Ed.2d 133 (1987), *on remand*, 503 So.2d 1009 (La.1987). The question is whether the prospective juror could assess the credibility of each witness independently of his/her relationship with law enforcement. *State v. Carlos*, 618 So.2d 933 (La.App. 1 Cir.1993), *writ denied*,

623 So.2d 1305 (La.1993). In the context of peremptory challenges, distinct from disqualification of a prospective juror for cause, potential partiality because of such relationship is a sufficient racially neutral reason for a peremptory challenge. *State v.Wilson,* 25,775 (La.App. 2 Cir. 2/23/94), 632 So.2d 861.